UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN LAVON GILES,

     Plaintiff,                 Case No. 2:23-cv-10951

                                 District Judge Jonathan J.C. Grey

v.                            Magistrate Judge Kimberly G. Altman

JONATHAN HEMINGWAY,
HOUSE, TOFUIL, and N.
CLINGERMAN,

     Defendants.

_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTIONS TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT (ECF Nos. 22, 49, 54) AND DISMISS ALL CLAIMS WITH PREJUDICE[1]

I.      Introduction

This is a prisoner civil rights case. Plaintiff Kevin Giles (Giles), proceeding *pro se* and *in forma pauperis*, filed a complaint naming Warden Jonathan Hemingway (Hemingway), Raymond Howes (Howes), Scott Tofil (Tofil), and Nicole Clingerman (Clingerman) as defendants.[2] (ECF No. 1). He asserts claims

---

[1] Upon review of the parties' papers, the undersigned deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(1).

[2] Defendants' names are spelled as they appear in their filings.

1

under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) for violations of his Eighth and Fourteenth Amendment rights while housed at the federal correctional institution in Milan, Michigan (FCI Milan) as a pretrial detainee.[3]  (*Id.*; ECF No. 14).  Under 28 U.S.C. § 636(b)(1), all pretrial matters have been referred to the undersigned.  (ECF No. 16).

Before the Court are three dispositive motions: Hemingway's motion to dismiss or for summary judgment, (ECF No. 22); Howes and Tofil's motion to dismiss or for summary judgment, (ECF No. 49); and Clingerman's motion to dismiss or for summary judgment, (ECF No. 54).  Defendants argue that Giles has failed to state a claim under *Bivens*, they are entitled to qualified immunity, and Giles failed to exhaust his administrative remedies before filing suit.

For the reasons that follow, the undersigned RECOMMENDS that defendants' motions be GRANTED and that the claims against them be DISMISSED WITH PREJUDICE for failure to state a claim.  Alternatively, the claims may be dismissed without prejudice, as Giles has failed to exhaust his administrative remedies before filing suit.

---

[3] Giles is awaiting trial in this district on charges of sex trafficking of minors and sex trafficking using force, fraud, and coercion.  He has been detained pending trial since May of 2021.  *United States v. Giles*, 2:21-cr-20398 (E.D. Mich., Berg, J.).

2

## II.    Background

### A.    Allegations

Giles allegations are taken from his Amended Statement of Claim, which was filed on June 13, 2023.[4]  (ECF No. 14).

Giles alleges that in April 2022, prison "medical staff" told him that his A1C was "out of control."  (ECF No. 14, PageID.106).  Giles responded that he "needed to see a[n] eye doctor because my blurry vision and severe headaches," but was told that "they don't have an eye doctor here."  (*Id.*).  Giles says that he has been imprisoned for "a year now [and] still ha[s] not seen a[n] eye doctor or got[ten] any eye glasses."  (*Id.*).

That same month, Giles complained that he was told by "medical staff" that he could not get his teeth cleaned in his first year at the prison.  (*Id.*, PageID.108). After his first year, he asked again to get his teeth cleaned and "was told by medical staff they don't clean FDC prisoners['] teeth."  (*Id.*).  Giles questioned "why lie to us telling us we have to be here for a year to get our teeth clean [when]

---

[4] Defendants are correct that Giles' Amended Statement of Claim amounts to an amended complaint filed as of right under Federal Rule of Civil Procedure 15(a). Howes, Tofil, and Clingerman argue that because their names were not in the caption of the amended complaint, they have been voluntarily dismissed from the action.  However, the amended complaint contains allegations against them, and reading the amended complaint liberally, it does not follow that those defendants were voluntarily dismissed.  The undersigned therefore addresses the merits of all defendants' motions regarding the allegations against them.

all along you are not cleaning [our] teeth." (*Id.*).

In July 2022, Giles says Cook Supervisor Howes and Tofil told other inmates that he is a "chomo," which is prison slang for a child molester. (*Id.*, PageID.105). This allegedly led to Giles being fired from his job in the prison kitchen, as well as being ridiculed by fellow inmates. (*Id.*). Then, in October 2022, Giles says "a staff member invited him to touch his private part saying get these[] nuts bitch." (*Id.*, PageID.107). He called the number he found on the bulletin board regarding the Prison Rape Elimination Act (PREA), but the number was not correct. (*Id.*). Giles alleges that he "told the warden," but "til this day this bulletin board ha[s] not been up to date." (*Id.*).

### B.    Prior Cases

Howes, Tofil, and Clingerman note in their motions that Giles is a serial filer of frivolous litigation against the Government, both before and since his incarceration. *See* ECF No. 49, PageID.269-270. An outline of Giles' prior and pending litigation is in order for reasons that will be explained below.

JANUARY 17, 2017 – 2 cases filed

1. **2:17-cv-10153 and 10154**: In these cases, Giles sued Oakland County Sheriff Michael J. Bouchard and various Oakland County Jail entities. The cases were consolidated on June 14, 2017. On March 28, 2018, District Judge Gershwin A. Drain granted a motion to dismiss by one group of defendants (after Giles failed to respond

to the motion),[5] and on April 8, 2019, Giles' entire consolidated case was dismissed for failure to prosecute.[6]

JULY 28, 2023 – 1 case filed

2. **2:23-cv-11828**: In this case, Giles alleged that that the retroactive application of the sex offender statute requiring him to register as a sex offender violated his constitutional rights.  On August 7, 2023, District Judge Stephen J. Murphy III dismissed the case as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i).

JANUARY 17, 2024 – 4 cases filed

3. **2:24-cv-10134**: In this case, pending before District Judge Laurie J. Michelson and referred to the undersigned, Giles alleges that he has been receiving cold, child-sized portions of food that do not meet his assessed requirement of 2,800 calories per day and that his living conditions at the Saginaw County Jail are unsanitary.  Defendants have waived service and their answers are due in June.

4. **1:24-cv-10136**: In this case, Giles sued the Michigan Attorney General Dana Nessel, Michigan Department of Health and Human Services, and two unknown Child Protective Services (CPS) employees.  On April 5, 2024, District Judge Thomas L. Ludington dismissed the case *sua sponte* as frivolous and for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B).[7]

5. **2:24-cv-10137**: In this case, Giles made various allegations regarding his conditions of confinement at the Genesee County Jail.  On April 16, 2024, District Judge Nancy G. Edmunds *sua sponte*

---

[5] *Giles v. Bouchard*, No. 17-CV-10153, 2018 WL 1522372 (E.D. Mich. Mar. 28, 2018).

[6] *Giles v. Bouchard*, No. 17-CV-10153, 2019 WL 1515283 (E.D. Mich. Apr. 8, 2019).

[7] *Giles v. Michigan Dep't of Health & Hum. Servs.*, No. 1:24-CV-10136, 2024 WL 1478861 (E.D. Mich. Apr. 5, 2024).

dismissed the case as frivolous.[8]

6. **1:24-cv-10138**: In this case, Giles sued the United States Attorney General Merrick Garland, United States Attorney for the Eastern District of Michigan Dawn Ison, Assistant United States Attorney Sara Woodard, Assistant United States Attorney Diane Princ, and his former defense attorney Michael E. Carter. He claimed that defendants violated his constitutional rights during his criminal prosecution for various sex trafficking related offenses. On April 5, 2024, District Judge Thomas L. Ludington *sua sponte* dismissed it as frivolous.[9]

LAWSUITS FILED AFTER JANUARY 17, 2024

7. **2:24-cv-10332**: On February 8, 2024, Giles sued U.S. Attorney General Merrick Garland and F.B.I. Special Agent Christopher Szczygiel under *Bivens* for constitutional violations during the investigation of his pending criminal matters. On May 13, 2024, District Judge Terrence G. Berg *sua sponte* dismissed the case as frivolous and because it constituted an impermissible collateral attack on his criminal proceedings. *See United States v. Ragland*, No. 15-20800, 2017 WL 2728796, at *2 (E.D. Mich. June 26, 2017).[10]

8. **1:24-cv-11052**: Finally, on April 22, 2024, Giles filed a complaint against several defendants regarding small food portions and retaliation at Sanilac County Jail. The complaint has yet to be served on the defendants. *Giles v. Rich, et al.*,1:24-cv-11052 (E.D. Mich., Ludington, J.)

Based on the dismissals in cases (1) 2:23-cv-11828, (2) 2:24-cv-10137,

---

[8] *Giles v. Swanson*, No. 24-10137, 2024 WL 1641224 (E.D. Mich. Apr. 16, 2024).

[9] *Giles v. Garland*, No. 1:24-CV-10138, 2024 WL 1478862 (E.D. Mich. Apr. 5, 2024).

[10] *Giles v. Garland*, No. 224CV10332TGBPTM, 2024 WL 2138624 (E.D. Mich. May 13, 2024).

(3)1:24-cv-10138, (4) 1:24-cv-10136, and (5) 2:24-cv-10332, Giles is what is

commonly known as a "three striker," meaning that any future cases he files are

subject to 28 U.S.C. § 1915(g), which states:

> In no event shall a prisoner bring a civil action or appeal a judgment in
> a civil action or proceeding under this section if the prisoner has, on 3
> or more prior occasions, while incarcerated or detained in any facility,
> brought an action or appeal in a court of the United States that was
> dismissed on the grounds that it is frivolous, malicious, or fails to state
> a claim upon which relief may be granted, unless the prisoner is under
> imminent danger of serious physical injury.

In other words, any cases brought by Giles after April 5, 2024, are subject to

dismissal unless he plausibly alleges imminent danger of serious physical injury.

### III.    Legal Standards

### A.    Motions to Dismiss

When deciding a motion to dismiss under Federal Rule of Civil Procedure

12(b)(6), the Court must "construe the complaint in the light most favorable to

plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605,

608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks

and citation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (concluding that a plausible claim need not contain "detailed factual

allegations," but it must contain more than "labels and conclusions" or "a

7

formulaic recitation of the elements of a cause of action").  Facial plausibility is

established "when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678.  "The plausibility of an inference depends on a host of

considerations, including common sense and the strength of competing

explanations for the defendant's conduct."  *16630 Southfield Ltd., P'Ship v.

Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards

than formal pleadings drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519, 520

(1972).  However, even in pleadings drafted by *pro se* parties, " 'courts should not

have to guess at the nature of the claim asserted.' "  *Frengler v. Gen. Motors*, 482

F. App'x 975, 976-977 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594

(6th Cir. 1989)).  Moreover, "courts may not rewrite a complaint to include claims

that were never presented . . . nor may courts construct the Plaintiff's legal

arguments for him. . . .  [N]either may the Court 'conjure up unpled allegations[.]'

" *Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009)

(Ludington, J., adopting report and recommendation of Binder, M.J.).

### B.  Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Giles is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). Additionally, "once a case has progressed to the summary judgment stage, as is true here, the liberal pleading standards under the Federal Rules are

9

inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (cleaned up).

## IV.    Discussion

### A.    *Bivens* Claims

#### 1.    Standard

"To state a claim under *Bivens*, a plaintiff must allege that he was 'deprived of rights secured by the Constitution or laws of the United States' and that 'the defendants who allegedly deprived [him] of those rights acted under color of federal law.' " *Hower v. Damron*, No. 21-5996, 2022 WL 16578864, at *2 (6th Cir. Aug. 31, 2022) (quoting *Marie v. Am. Red Cross*, 771 F.3d 344, 364 (6th Cir. 2014) (emphasis omitted)).  To date, the Supreme Court has extended *Bivens* liability to federal officials in only three contexts:

> (1) under the Fourth Amendment for a violation of the prohibition against unreasonable searches and seizures of a private citizen's residence, *Bivens*, 403 U.S. at 389, 397;
>
> (2) under the Fifth Amendment Due Process Clause for gender discrimination, *Davis v. Passman*, 442 U.S. 228, 230-31, 248-49 (1979); and,
>
> (3) under the Eighth Amendment for failing to provide adequate medical treatment to a prisoner, *Carlson v. Green*, 446 U.S. 14, 16 n.1, 19 (1980).

*Id*.  Since 1980, the Supreme Court has rejected extension of *Bivens* to new

contexts on 12 different occasions.  *See Egbert v. Boule*, 596 U.S. 482, 486 (2022)

(collecting cases).

In its latest ruling, the Supreme Court declined extension of the doctrine to a

Customs and Border Protection agent accused of violating the plaintiff's Fourth

Amendment rights by entering his private property and using excessive force

against him.  *Id.*  The only factor distinguishing the allegations in *Egbert* from

those in *Bivens* was the federal agency involved, which introduced a border-

security context to the otherwise recognized cause of action under *Bivens*.

Analyzing a plaintiff's *Bivens* claim involves a two-step inquiry.

First, [the Court] asks whether the case presents a new *Bivens* context
–i.e., is it meaningfully different from the three cases in which the Court
has implied a damages action.  Second, if a claim arises in a new
context, a *Bivens* remedy is unavailable if there are "special factors"
indicating that the Judiciary is at least arguably less equipped than
Congress to weigh the costs and benefits of allowing a damages action
to proceed.  If there is even a single reason to pause before applying
*Bivens* in a new context, a court may not recognize a *Bivens* remedy.

*Egbert*, 142 S. Ct. at 1803 (cleaned up).  "[T]hose steps often resolve to a single

question: whether there is any reason to think that Congress might be better

equipped to create a damages remedy."  *Id.*

2.    Analysis

Each of Giles' claims presents a new context for the application of *Bivens*.

"[T]he new-context inquiry is easily satisfied."  *Ziglar v. Abbasi*, 582 U.S. 120,

149 (2017).  "A claim may arise in a new context even if it is based on the same constitutional provision as a case in which a damages remedy was previously recognized."  *Hernandez v. Mesa*, 589 U.S. 93, 103 (2020).  Even in cases that "involve similar allegations" to *Bivens* and its progeny, "and thus arguably present 'almost parallel circumstances' or a similar 'mechanism of injury,' . . . these superficial similarities are not enough to support the judicial creation of a cause of action."  *Egbert*, 596 U.S. at 495 (quoting *Ziglar*, 582 U.S. at 139).  As shown by *Egbert*, even a different federal agency committing the same constitutional violation can qualify as a new context.  *Id.*

Here, two of Giles' claims bear no resemblance to *Bivens*, *Davis*, or *Carlson*.  Giles' claims that he was labeled as a child molester and that his ability to report sexual abuse was hindered by incorrect signage do not fall under constitutional provisions that have previously been found to state *Bivens* claims; thus, his only avenue for relief would be to show that the Judiciary is better equipped than Congress to fashion a remedy for his alleged violations.

The remaining two claims, relating to vision and dental care, indisputably involve denial of non-emergency and non-essential medical care.  *See* ECF No. 14, PageID.106, 108.  Both claims sound under the Eighth Amendment, which was also at issue in *Carlson*.  In *Carlson*, the claim was for deliberate indifference to an inmate's serious medical needs, specifically related to asthma, and the inmate's

12

lack of medical care led to his death.  446 U.S. at 16.

In *Carls*on, the plaintiff-inmate, Joseph Jones, "had been diagnosed as a chronic asthmatic in 1972 when he entered the federal prison system."  *Green v. Carlson*, 581 F.2d 669, 671 (7th Cir. 1978).  When he "was admitted to the prison [infirmary] with an asthmatic attack," despite the fact "he was in serious condition for some eight hours, no doctor saw him because none was on duty and none was called in."  *Id.*  Rather, a unlicensed nurse instead attempted to use a broken respirator to treat Jones.  *Id.*  The nurse then "administered two injections of Thorazine, a drug contraindicated for one suffering an asthmatic attack."  *Id.*  When Jones then went into cardiac arrest, the nurse and another staffer retrieved a defibrillator, but neither knew how to operate it.  *Id.*  Jones was then rushed to the hospital, where he was declared dead on arrival.  *Id.*  The complaint alleged that Jones "died as the result of medical care so inappropriate as to evidence intentional maltreatment."  *Id.*

Giles' complaint of blurry vision and headaches due to not having eyeglasses is not comparable to *Carlson*.  Even though *Carlson* is not limited to asthma-related claims, *see Foreman v. United States*, No. 2:22-CV-10401, 2022 WL 17826503, at *6 (E.D. Mich. Nov. 16, 2022), *report and recommendation adopted*, 2023 WL 1991561 (E.D. Mich. Feb. 14, 2023), *appeal dismissed* (June 2, 2023), there is no similarity between Giles' claim and *Carlson* in terms of the

emergent nature of care needed, the severity of the medical needs, or the alleged shortcomings of medical staff.  Here, FCI Milan simply lacks an eye doctor. Whether this constitutes deliberate indifference is not before the Court, but because it does not closely resemble an already-recognized *Bivens* claim, it presents a new context.

Giles' claim that FCI Milan did not provide teeth cleaning resembles *Carlson* even less.  These allegations fail to rise to the level of a constitutional violation, as other courts have concluded, *see Dennis v. Heyns*, No. 1:15-CV-87, 2015 WL 1211592, at *2 (W.D. Mich. Mar. 17, 2015) (citing *Bumpus v. Watts,* 448 F. App'x 3, 5 (11th Cir. 2011); *Hallett v. Morgan,* 296 F.3d 732, 746 (9th Cir. 2002)), and do not state a claim that is cognizable under *Bivens*, *Edkins v. United States*, No. 15-10615, 2016 WL 4059695, at *3 (E.D. Mich. Apr. 10, 2016), *report and recommendation adopted*, 2016 WL 4011241 (E.D. Mich. July 27, 2016).

Because Giles' claims represent new contexts under *Bivens*, the undersigned must assess whether any special factors indicate that the Judiciary may be arguably less equipped than Congress to weigh the costs and benefits of allowing his claims to proceed.  "Under the proper approach, a court must ask more broadly if there is any reason to think that judicial intrusion into a given field might be harmful or inappropriate."  *Egbert*, 596 U.S. at 496 (cleaned up).  "If so, or even if there is the *potential* for such consequences, a court cannot afford a plaintiff a *Bivens* remedy."

*Id.* (cleaned up, emphasis in *Egbert*).

Here, as all of the recent Supreme Court cases applying *Bivens* have found, special factors counsel against fashioning a new *Bivens* context and allowing Giles' claims to proceed. For instance, in *Ziglar*, the Supreme Court found petitioners' "detention policy claims" regarding their conditions of confinement— which allegedly included detention in cramped housing for 23 hours per day, lights on at all hours, no access to basic hygiene products, no communication with the outside world, and random, frequent strip searches—could not proceed under *Bivens*. 582 U.S. at 137-38. "The proper balance [between remedies for petitioners and restrictions on the federal governments] is one for the Congress, not the Judiciary, to undertake." *Id*. at 146.

"[I]n any inquiry respecting the likely or probable intent of Congress, the silence of Congress is relevant[.]" *Id.* at 143. The *Ziglar* Court analyzed this as follows:

> The decision to recognize an implied cause of action under a statute involves somewhat different considerations than when the question is whether to recognize an implied cause of action to enforce a provision of the Constitution itself. When Congress enacts a statute, there are specific procedures and times for considering its terms and the proper means for its enforcement. It is logical, then, to assume that Congress will be explicit if it intends to create a private cause of action. With respect to the Constitution, however, there is no single, specific congressional action to consider and interpret.
>
> Even so, it is a *significant step under separation-of-powers principles* for a court to determine that it has the authority, under the judicial

15

power, to *create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation*.   When determining whether traditional equitable powers suffice to give necessary constitutional protection—or whether, in addition, a damages remedy is necessary—there are a number of economic and governmental concerns to consider.   Claims against federal officials often create substantial costs, in the form of defense and indemnification.   Congress, then, has a substantial responsibility to determine whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government.   In addition, the time and administrative costs attendant upon intrusions resulting from the discovery and trial process are significant factors to be considered.

*Id.* at 133-34 (emphasis added).

"Given the notable change in the Court's approach to recognizing implied causes of action, however, the Court has made clear that expanding the *Bivens* remedy is now a "disfavored" judicial activity.  *Id.* at 135 (quoting *Iqbal,* 556 U.S. at 675).  "This is in accord with the Court's observation that it has 'consistently refused to extend *Bivens* to any new context or new category of defendants.' "  *Id.* (quoting *Corr. Servs. Corp. v. Malesko,* 534 U.S. 61, 68 (2001)).  "Indeed, the Court has refused to do so for the past 30 years."  *Id.*

Given the significant special factors regarding Congressional intent, separation of powers, and the administration of prisons, as well as the past 30-plus years of Supreme Court jurisprudence on the matter, the undersigned finds that special factors caution against allowing Giles' *Bivens* claims to proceed here. Therefore, it is recommended that Giles' claims against all defendants be

16

dismissed with prejudice.

### B.    Qualified Immunity

Defendants also assert that they are entitled to qualified immunity on Giles'

claims because they did not violate a "clearly established" constitutional right.

*Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013).  Hemingway argues that the

allegations against him fail to suggest his personal involvement in Giles' rights

being violated, which would entitle him to qualified immunity.  *See Iqbal*, 556

U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant,

through the official's own individual actions, has violated the Constitution.").

Tofil, Howes, and Clingerman argue that Giles has not alleged constitutional

violations supported by controlling or even persuasive authority to overcome

qualified immunity.  *See Thompson v. Mich. Dep't of Corr*., 25 F. App'x 357, 359

(6th Cir. 2002) (affirming district court's dismissal where plaintiff's claim that he

was endangered by being labeled a snitch was unsupported by any allegation of

harm); *Gibbs v. Ball*, No. 07-CV-15462-DT, 2009 WL 331604, at *4 (E.D. Mich.

Feb. 11, 2009) (physical injury necessary); *Howell v. Reams*, No. CIV.A. 14-206-

DLB, 2015 WL 1951940, at *4-5 (E.D. Ky. Apr. 29, 2015) (holding that "routine

preventative dental care does not constitute a serious medical need" and "one has

no constitutional right to a routine dental cleaning"); *Blanch v. Schiff*, No. 18 CV

838 (NSR), 2021 WL 1177743, at *14 (S.D.N.Y. Mar. 26, 2021) ("[N]umerous

courts have held that, absent an improper motive, which Plaintiff does not allege here, delay in procuring glasses does not amount to a constitutional violation.").

While defendants' arguments for qualified immunity are compelling, the undersigned need not reach the issue. "The *Bivens* question" is " 'antecedent' " to issues such as qualified immunity. *Hernandez v. Mesa*, 582 U.S. 548, 553 (2017) (quoting *Wood v. Moss*, 572 U.S. 744, 757 (2014)). In *Hernandez*, the Supreme Court vacated and remanded the Court of Appeals decision on qualified immunity with instructions for that court to first address the "antecedent" question of whether the plaintiff could proceed on his claim under *Bivens*. Here, as explained above, Giles has not made out any viable claims under *Bivens*. Therefore, the question of qualified immunity is moot.[11]

C.   Exhaustion of Administrative Remedies

Defendants also argue that Giles failed to exhaust his administrative remedies before filing suit, which requires their dismissal under the Prison

---

[11] Howes, Tofil, and Clingerman also move for dismissal of any claims against them in their official capacities based on sovereign immunities. It is unclear whether Giles sues defendants in their individual or official capacities or both. If the complaint is read to allege constitutional violations against Howes, Tofil, and Clingerman in their official capacities, then they are correct that those claims should be dismissed. Claims against federal officers in their official capacities amount to claims against the federal government, *Kentucky v. Graham*, 473 U.S. 159, 166 (1985), and Giles has failed to identify a waiver of sovereign immunity that would allow him to proceed, *Jackson v. United States*, 751 F.3d 712, 716 (6th Cir. 2014).

Litigation Reform Act (PLRA).  The undersigned recommends dismissal with prejudice, as explained above, for failure to state a claim.  However, in the alternative, dismissal without prejudice would also be warranted for Giles' failure to exhaust his claims.

1.    Standard

The PLRA requires prisoners to "properly" exhaust all "available" administrative remedies prior to filing a lawsuit challenging prison conditions.  42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006).  Proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (emphasis in original) (internal quotation marks and citations omitted).  Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court and produces a useful administrative record.  *Jones v. Bock*, 549 U.S. 199, 204 (2007).  The PLRA does not detail what "proper exhaustion" entails because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  *Id.* at 218.

"Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."  *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015).  But a prisoner

19

countering a motion alleging failure to exhaust "must offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so." *Sango v. Johnson*, No. 13-12808, 2014 WL 8186701, at *5 (E.D. Mich. Oct. 29, 2014), *report and recommendation adopted*, 2015 WL 1245969 (E.D. Mich. Mar. 18, 2015).  Granting summary judgment because of a failure to exhaust administrative remedies is not on the merits and thus requires dismissal without prejudice.  *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

## 2.    Application

The Federal Bureau of Prisons (BOP) provides a three-step administrative remedy program to formally review any complaint by a prisoner that relates to any aspect of the inmate's confinement.  *See* 28 C.F.R. § 542 *et seq*.  Inmates must first attempt informal resolution of their complaints by discussing the matter with a member of their Unit Team.  *Id.* § 542.13.  If informal resolution fails to resolve the matter, the inmate may file a formal complaint or remedy with the warden (referred to as a BP-9) within 20 days of the date on which the basis of the complaint occurred.  *Id.* § 542.13.  If the inmate is not satisfied with the warden's response, within 20 days, he or she may appeal the response to the Regional Director (referred to as a BP-10).  *Id.* § 542.15.  If the inmate is dissatisfied with the regional response, within 30 days, he or she may file a national appeal with the Office of General Counsel in Washington, D.C. (referred to as a BP-11).  *Id.*  An

issue is considered exhausted after completion of appeal to the Office of General

Counsel. *Conner v. Ives*, No. 6:11-00259, 2011 WL 6032970 at *2, n.3 (E.D. Ky.

Nov. 30, 2011).

In support of defendants' motions, Hemingway has attached a declaration

from S. Allison-Love, the Consolidated Legal Center Attorney for the BOP at FCI

Milan. (ECF No. 22-1). S. Allison-Love attests that according to FCI Milan

records, Giles has filed grievances related to these issues, but that they were

rejected for failure to follow the procedures outlined above, rendering his claims

unexhausted.

Giles' first grievance related to seeing an eye doctor was initially filed at the

correct level, BP-9, and BOP responded that Giles was referred to an optometrist

and on a waiting list to be seen. (*Id.*, PageID.181). Giles then filed a BP-10

related to this issue. (*Id.*). But because the BP-10 was filed before he had received

his response to his BP-9, it was rejected. (*Id.*). Giles did not correct and resubmit

the request, therefore failing to follow the administrative process. (*Id.*,

PageID.181-182).

The rest of Giles' grievances, as to his other claims, were all initially filed at

the BP-10 level, and were thus rejected because Giles failed to first file a grievance

at the BP-9 level. (*Id.*, PageID.182-183). Thus, according to S. Allison-Love's

sworn declaration, Giles has not exhausted any of his administrative remedies.

According to Giles, he has "had to file grievance after grievance dealing with this complaint against [Howes and Tofil], but they continue to come up missing." (ECF No. 59, PageID.328). However, he has offered no evidence to rebut the supported contention from defendants that he never in fact filed an initial grievance against Howes and Tofil at the BP-9 level. Furthermore, Giles has failed to address the defense that he failed to exhaust BOP remedies against Hemingway or Clingerman. Therefore, dismissal without prejudice for failure to exhaust would be appropriate. However, as outlined above, the undersigned recommends dismissal *with* prejudice for Giles' failure to state a claim under *Bivens*.

## V.    Conclusion

For the reasons stated above, the undersigned RECOMMENDS that defendants' motions, (ECF Nos. 22, 49, 54), be GRANTED and that the claims against defendants be DISMISSED WITH PREJUDICE for failure to state a claim. Alternatively, the claims may be dismissed without prejudice, as Giles has failed to exhaust his administrative remedies before filing suit. In either instance, this case would be dismissed in its entirety.

Dated: May 20, 2024                          s/Kimberly G. Altman
Detroit, Michigan                            KIMBERLY G. ALTMAN
                                             United States Magistrate Judge

## <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc.  If the court determines that any objections are without

merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 20, 2024.

s/Julie Owens\
Acting in the absence of\
CAROLYN CIESLA\
Case Manager
